IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | In Chapter 11 |
| ) | Case No.  09 B 25154 |
| L.J. FOOD DISTRIBUTION, INC., ) | Honorable  Jacqueline P. Cox |
| ) | |
| Debtor-In-Possession ) | |

### FINAL ORDER PERMITTING DEBTOR TO USE CASH COLLATERAL BELONGING TO CENTIER BANK AND RESOLVING OBJECTION THERETO BY LAMB-WESTON SALES, INC.

THIS CAUSE COMING ON TO BE HEARD on motion of Debtor, L.J. FOOD DISTRIBUTION, INC., for entry of a final order permitting it to use cash collateral belonging to Centier Bank (the "Cash Collateral Motion"), it appearing to the Court that Lamb-Weston Sales, Inc. ("Lamb-Weston") filed an objection to the entry thereof, the Court being duly advised in the premises and the Debtor having represented that:

1. On July 10, 2009, Debtor filed a voluntary case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

2. Debtor provides food distribution services.

3. The Debtor is an Indiana corporation. Debtor operates out of two locations. The first location is 1601 37th Avenue, Suite 2, Munster, Indiana. Debtor also operates out 1590 South Milwaukee Avenue, Libertyville, Illinois. Debtor is also registered to do business in Illinois and is certified by the State of Illinois as a minority business enterprise. A substantial amount of Debtor's assets are located in Illinois. A substantial number of Debtor's creditors are located in Illinois.

### SECURITY INTEREST OF CENTIER BANK

4. On or about April 18, 2008, Debtor executed a promissory note in the amount of $150,000.00 in favor of Centier Bank, all as is more fully set forth on Exhibit 1 attached to the Cash Collateral Motion. Concurrently, Debtor executed a security agreement in favor of Centier Bank in which Debtor granted Centier Bank a security interest in all of its assets, including accounts receivable.

5. On or about June 19, 2008, Debtor executed a commercial revolving note in the amount of $200,000.00 in favor of Centier Bank, all as is more fully set forth on Exhibit 2 attached to the Cash Collateral Motion. Concurrently, Debtor executed a security agreement in favor of Centier Bank in which Debtor granted Centier Bank a security interest in all of its assets, including accounts receivable.

6. Centier Bank filed a UCC-1 form with the Secretary of State of Illinois on January 5, 2004. Centier Bank filed a continuation statement with the Secretary of State of Illinois on December 13, 2008. At the time that Centier Bank filed the UCC-1 statement, Debtor was registered as an Illinois corporation. Also at that time, Debtor was registered as an Indiana corporation. On June 16, 2005, Debtor voluntarily dissolved its Illinois corporation. On May 23, 2006, Debtor registered as a foreign corporation in Illinois. Given these circumstances, Debtor believes that a question exists as to the extent and priority of Centier Bank's lien. Therefore, Debtor will be filing an adversary action to determine the extent and priority of Centier Bank's lien. In the interim, to protect the Debtor from the possibility of using cash collateral belonging to another entity, Debtor has requested entry of an interim order which provides for periodic payments to and a replacement lien for Centier Bank subject to determining the extent and priority of Centier Bank's lien.

7. Debtor believes that the balance due to Centier Bank is approximately $219,000.00. Debtor believes that the value of the assets securing its obligations to Centier Bank is approximately $531,570.00.

### DEBTOR REQUIRES USE OF CASH COLLATERAL

8. The Debtor requires the use of its cash collateral as it is defined in Section 363(a) of the Bankruptcy Code and requests authorization of this Court to utilize the cash collateral pursuant to the provisions of Section 363(c)(2)(B) of the Bankruptcy Code. A statement showing Debtor's anticipated expenses is attached hereto as Exhibit 1.

9. Centier Bank will not be harmed by the interim use of cash collateral generated from the assets and proceeds thereof. As to the use thereof, the Debtor proposes that Centier Bank be granted replacement liens upon the assets in Debtor's possession subsequent to the filing of the Chapter 11 petition to the extent of the collateral utilized, subject to verification of the extent and validity of the liens as discussed above. In addition, as adequate protection, Debtor proposes to make monthly adequate protection payments to Centier Bank in the amount of $3,374.89 and to grant Centier Bank a replacement lien upon the proceeds from assets Debtor acquires subsequent to the filing of the Chapter 11 petition to the extent that the collateral is utilized subject to verification of the extent and validity of the lien.

10. The use of collateral held by Centier Bank will cause little, if any, harm to Centier Bank. Conversely, the harm to the Debtor will be substantial because the use of cash collateral is essential to its status as a going concern. The Debtor further believes that Centier Bank is fully protected for the value of its lien provided by a replacement lien to the extent of collateral utilized.

11.   The Debtor has no other source of income other than the receipts from the revenues from its services. If the Debtor is not given the use of cash collateral, it will be unable pay its employees for their services. If the employees are not paid in a timely manner, Debtor will be unable to retain its employees. The Debtor would then be forced into a premature liquidation.

## CLAIM OF LAMB-WESTON

12.   Lamb-Weston supplied Debtor, pre-petition, with wholesale quantities of frozen potatoes ("Produce"), with an invoice value of $16,743.81, all of which qualifies for protection under the trust provisions of the Perishable Agricultural Commodities Act ("PACA") [7 U.S.C. §499e]. Lamb-Weston also maintains, and hereby asserts, claims for interest and attorneys fees as sums owing in connection with the produce transaction.

13.   Lamb-Weston objected to the use of cash collateral to the extent that the trust funds belonging to Lamb-Weston under PACA would be treated as property of the estate and cash collateral.

14.   Lamb-Weston and the Debtor have agreed to resolve Lamb-Weston's objection to provide for payment of trust fund assets to Lamb-Weston. Pursuant to the agreement, Lamb-Weston will cap the interest and attorneys fees portion of its claim and will accept $20,000.00 in full settlement of all trust funds held by the Debtor. Without altering or extending its original payment terms, Lamb-Weston has agreed to accept five monthly installment payments of $4,000.00 each beginning on August 20, 2009, reserving all rights until payment in full is made.

15.   Lamb-Weston has agreed to withdraw its objection to the use of cash collateral subject to the terms described herein.

### DISCLOSURE PURSUANT TO LR 4001-2

16. Debtor represented that none of the provisions of the proposed cash collateral warrant highlighting as required by LR 4001-2. Debtor represents that although Debtor will be paying Lamb-Weston concurrently with its cash collateral payments to Centier Bank, Debtor does not believe that these payments would constitute priming a lien without the consent of the lienor as described in LR 4001-2(g). Since the funds being paid to Lamb-Weston are not property of the estate but rather trust funds belonging to Lamb-Weston, the cash collateral belonging to Centier Bank will not be affected.

IT IS HEREBY ORDERED that:

A. Debtor is authorized to utilize cash collateral to the extent needed pursuant to the attached budget.

B. Centier Bank is granted a lien on the proceeds from assets Debtor acquires subsequent to the filing of the Chapter 11 petition to the extent that the collateral is utilized subject to a determination of the extent and priority of Centier Bank's lien.

C. Debtor shall make monthly adequate assurance payments to Centier Bank in the amount of $3,374.89 until further order of Court upon a determination of the extent and priority of Centier Bank's lien on the Debtor's assets.

D. Debtor shall pay to Lamb-Weston c/o its counsel, Mark A. Amendola, Martyn and Associates, 820 Superior Avenue, N.W. Tenth Floor, Cleveland, Ohio 44113, a total of $20,000.00 in five installments of $4,000.00 each beginning on August 20, 2009 and due on the 20th day of each month thereafter.

E.  This order shall remain in effect until further order of this Court or upon confirmation of a plan of reorganization, whichever shall occur first.

Dated: _____8-19-09_____

ENTER: ___J. Cox___  *Jacqueline P. Cox*
U.S. Bankruptcy Judge

QUERREY & HARROW, LTD.
Attorneys for Debtor
175 West Jackson Boulevard, Suite 1600
Chicago, Illinois  60604
312-540-7000

L J Food Distribution, Inc.
Monthly Operating Budget

| Reciepts | |
|---|---:|
| Sales | 580,000 |
| Cost of sales | 492,000 |
| Gross Profit | 88,000 |

| Disbursements | |
|---|---:|
| **Operating Expense** | |
| Payroll and payroll tax | 28,104 |
| Auto and truck expense | 20,630 |
| Rent expense | 17,500 |
| Utilities & telephone expense | 5,140 |
| Office expense | 1,540 |
| Insurance expense | 3,566 |
| Warehouse expense | 250 |
| Interest expense | 979 |
| Total Operating Expense | 77,709 |
| | |
| **Debt payments** | |
| Term Loan | 2,377 |
| Revloving Loan | 997 |
| Toyota Lease | 794 |
| | 4,168 |
| | |
| **PACA Trust Funds** | |
| Lamb-Weston Sales, Inc. | 4,000 |
| (for 5 months from 8/20/09 | |
| | |
| **Total Cash Expenditures** | 85,877 |

| Net Cash Flow | 2,123 |
|---|---:|